UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CYNTHIA L. J.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02134-JPH-MG |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of Social Security Administration[2], | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Cynthia J. seeks judicial review of the Social Security Administration's decision denying her petition for Disability Insurance Benefits and Supplemental Security Income. She argues that the Administrative Law Judge erred when determining her Residual Functional Capacity ("RFC") because he failed to cite substantial evidence for his finding that her symptoms improved with treatment. Dkt. 16 at 5. For the reasons that follow, the decision is **AFFIRMED.**

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Kilolo Kijakazi automatically became the Defendant in this case on July 9, 2021, when she was named as the Acting Commissioner of the SSA. Fed. R. Civ. P. 25(d).

1

# I.
# Facts and Background

Plaintiff was 44 years old at the alleged onset date of her disability. Dkt. 13-2 at 25. She applied for disability benefits on September 8, 2017, alleging that she had become disabled beginning on May 15, 2017. Dkt. 13-2 at 16. Plaintiff's application was initially denied on October 17, 2017, dkt. 13-4 at 2, and denied upon reconsideration on January 19, 2018. Dkt. 13-2 at 16.

The ALJ held a hearing on June 11, 2019, dkt. 13-2 at 16, and denied Plaintiff's claims on July 1, 2019. Dkt. 13-2 at 13. The Appeals Council denied review on June 17, 2020. Dkt. 13-2 at 2. Plaintiff then brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g). Dkt. 1.

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. Dkt. 13-2 at 12–29. Specifically, the ALJ found that:

- At Step One, Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Dkt. 13-2 at 18.

- At Step Two, Plaintiff has "the following severe impairments: vertiginous syndrome, degenerative disc disease, and depression." Dkt. 13-2 at 18.

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Dkt. 13-2 at 19.

- After Step Three but before Step Four, she has the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift/carry and push/pull 10 pounds occasionally and less than 10 pounds frequently; she can sit for six hours, stand for two hours and walk for two hours, each in an eight-hour workday; she can frequently

- operate hand controls bilaterally; she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, and crouch, but never crawl; she can frequently handle and finger bilaterally; she can never work at unprotected heights, around mechanical parts, or operate a motor vehicle; and she is able to perform simple, routine, tasks." Dkt. 13-2 at 21.

- At Step Four, Plaintiff "is unable to perform any past relevant work." Dkt. 13-2 at 24.

- At Step Five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy" that she can perform. Dkt. 13-2 at 25.

## II.
## Applicable Law

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards, and that substantial evidence supports the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step

3

four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e),(g).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard or is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

### III.
### Analysis

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). "The RFC assessment must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Paul*, 955 F.3d 583, 595-96 (7th Cir. 2020). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a

4

reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148,1154 (2019). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Plaintiff argues that the ALJ failed to cite substantial evidence to support his RFC finding, including the finding that Plaintiff's symptoms were improved with treatment. Dkt. 16 at 2–3. She contends that her symptoms were severe and worsened after treatment, and that she has many limitations from neck pain and vertigo. *Id.* at 6. The Commissioner responds that the ALJ supported his RFC finding with substantial evidence. Dkt. 17 at 2.

The ALJ created a logical bridge from the evidence in the record to his RFC finding. He acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but found that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." Dkt. 13-2 at 22. Specifically, the ALJ noted that findings from Plaintiff's physical examination were "within normal limits, including her mental status," and that "[an] MRI of the brain showed no structure abnormality or inflammatory change involving the inner ear, as well as generally normal appearance of the brain." *Id.* He also noted that Plaintiff had performed physical therapy and "met established goals for

5

neuromuscular retraining," and that "her symptoms have improved with mindfulness-based cognitive therapy." Dkt 13-2 at 22–23.  For these reasons, the ALJ concluded that while "there has been very little treatment" for Plaintiff's "alleged mental impairment," "her symptoms have improved." *Id.* at 23.

      Those findings and conclusions are supported by medical evidence in the record.  Although the Plaintiff testified that she experienced no significant or ongoing relief of her vertigo or pain symptoms as a result of her physical therapy sessions, dkt 13-2 at 55, treatment records show that she met her treatment goals in August 2017 and that her status had "resolved," dkt. 13-7 at 289–91.  *See Apke v. Saul*, 817 F. App'x 252, 257-58 (7th Cir. 2020) (deferring to ALJ when plaintiff failed to show ALJ's subjective symptom evaluation was "patently wrong").  And while she alleges that she "was required to return to physical therapy for the same medical issues less than two years after her initial course of physical therapy," records from that therapy show improvement in nearly every area.  Dkt. 13-1 at 115–33 ("Although the patient reports no significant change in her pain complaints, she has clearly made excellent functional gains and movement related progress.").  Furthermore, plaintiff reported several times between February 2018 and April 2019 that the cognitive therapy was improving her symptoms.  Dkt. 13-8 at 60–63.  She also reported that between 2018 and 2019 her medications were helping or slightly improving her symptoms.  *Id.*

The opinions of state-agency medical and psychological consultants further support the ALJ's RFC.  Medical consultants Dr. Sands and Dr. Eskonen opined in late 2017 in early 2018 respectively that Plaintiff could perform at least light work with non-exertional limitations.  Dkt. 13-3 at 8–10, 21–23.  While the ALJ found those opinions "supported by substantial evidence" and partially persuasive, he acknowledged that they "did not have the opportunity to conduct physical examinations or consider evidence submitted at the hearing level."  The ALJ included limitations in the RFC to account for those limitations and for Plaintiff's subjective complaints and the combined effects of her conditions.  Dkt. 13-2 at 23.

State-agency psychological consultants, Dr. Uversaw and Dr. Larsen, found that Plaintiff did not have any work-related functional limitations.  Dkt. 13-3 at 6–7; 19–20.  The ALJ found those opinions partially persuasive as well for the same reasons.  Dkt. 13-2 at 23.  And the ALJ assigned mental limitations in the residual functional capacity to account for those limitations and for claimant's subjective complaints and the combined effects of her medically determinable impairment of depression.  Dkt. 13-2 at 23.

The ALJ considered all the medical evidence, including that no examining or treating source found the Plaintiff to be more limited than what the ALJ had determined.  Dkt. 13-2 at 23; *see Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010).  The medical evidence supports the ALJ's conclusion that while Plaintiff has "medically determinable 'severe' impairments," "the evidence

7

is inconsistent with [her] allegations of disabling symptoms and limitations." *Id.* at 24.

The ALJ also considered Plaintiff's "activities of daily living" in evaluating her symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p. He discussed her reported daily activities based on her indications that she could drive a car, cook, perform several household chores, and shop in stores. Dkt. 13-2 at 22. Having considered and referenced the medical evidence along with Plaintiff's reported activities of daily living, the ALJ did not make credibility determinations without explanation or support. *See Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008).

The ALJ therefore at least minimally articulated his reasoning for finding Plaintiff's treatment "relatively effective" and for concluding that she "does experience some limitations," but none leading to greater restrictions than included in his RFC. *Id.* at 24. The Court can therefore trace the logical bridge that the ALJ built to support his finding. *See, e.g., Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). In sum, the RFC shows that the ALJ gave reasoned consideration to the evidence that Plaintiff presented. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (affirming denial of a social security appeal when the "[RFC] finding was more limiting than that of any state agency doctor or psychologist" because it "illustrat[ed] reasoned consideration given to the evidence [Plaintiff] presented."). The ALJ's decision therefore must be affirmed. *Stephens*, 888 F.3d at 327.

8

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision.  Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 1/24/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Timothy E. Staggs
ARNHOLT & STAGGS LAW OFFICE
tim@arnholtandstaggs.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov